# EXHIBIT G

**Page 1**

```
             UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF DELAWARE

PRAGMATUS TELECOM LLC,     :   CA NO. 12-1533-RGA
                           :   June 26, 2014
           Plaintiff,      :
                           :   3:30 p.m.
      v.                   :
                           :
AT&T INC., et al.,         :
                           :
           Defendants.     :
...........................:


              TRANSCRIPT OF DISCOVERY DISPUTE
         BEFORE THE HONORABLE RICHARD G. ANDREWS
                UNITED STATES DISTRICT JUDGE


APPEARANCES:

For Plaintiff:     FARNAN LLP
                   BY:  BRIAN E. FARNAN, ESQ
                         -and-
```

**Page 2**

```
            FEINBERG DAY ALBERTI & THOMPSON
                BY:  M. ELIZABETH DAY, ESQ
                BY:  MARC C. BELLOLI, ESQ


For Defendants:  MORRIS, NICHOLS, ARSHT & TUNNELL
                BY:  KAREN JACOBS, ESQ
                BY:  MICHAEL J. FLYNN, ESQ
                For Defendants Seagate & Volkswagen

            MORRIS, NICHOLS, ARSHT & TUNNELL
                BY:  MICHAEL J. FLYNN, ESQ.
                         -and-
            FINNEGAN, HENDERSON, FARABOW, GARRETT &
            DUNNER
                BY:  LIONEL M. LAVENUE, ESQ
                For Defendants Rite-Aid and Bosch

            ABRAMS & BAYLISS
                BY:  JASON G. THORNLEY, ESQ.
                For Defendant HSN


            ASHBY & GEDDES
                BY:  JOHN G. DAY, ESQ
                         -and-
```

**Page 3**

```
            KILPATRICK TOWNSENDS & STOCKTON
                BY:  MICHAEL T. MORLOCK, ESQ
                For Defendant AT&T


            POTTER, ANDERSON & CORROON
                BY:  PHILIP A. ROVNER, ESQ
                For Defendant Frontier


            POTTER, ANDERSON & CORROON
                BY:  RICHARD L. HORWITZ, ESQ
                For Defendants eGain and Reed Elsevier


            POLSINELLI SHUGHART PC
                BY:  CHRISTOPHER COGGINS, ESQ
                For Defendant U-Haul






Court Reporter:     LEONARD A. DIBBS
                    Official Court Reporter
```

**Page 4**

```
                    P R O C E E D I N G S

            (The proceedings occurred at 3:39 p.m. as follows:)

15:29:42    THE COURT:  Please be seated.  Good afternoon.
            MS. JACOBS:  Good afternoon.
            THE COURT:  Oh, okay.  I see at least one of letters
here is captioned Pragmatus Telecom LLC litigation, and the
other one is captioned Pragmatus Telecom v. AT&T, Civil Action
15:30:04 No. 12-1533, and Pragmatus Telecom v. Volkswagen Group of
America, Civil Action No. 12-1559.
            Mr. Belloli, I don't think your name spelled here is
the same way it was when we were just in court.
            MR. BELLOLI:  Mr. Farnan might have been put some L's
15:30:28 and O's in the wrong spot.
            THE COURT:  Okay.  All right.
            Mr. Farnan, you've got Mr. Belloli and Ms. Day.
            MR. FARNAN:  Yes.
            THE COURT:  All right.
15:30:34    Who do we have for the defendants here?  I'll start
with you Ms. Jacobs.
            MS. JACOBS:  Good afternoon, your Honor.
            Karen Jacobs from Morris Nichols here for Volkswagen
and Seagate, and Michael Flynn is also here for Volkswagen and
Seagate and some additional defendants.
```

5

1  MR. FLYNN: Your Honor, Michael Flynn from Morris
2  Nichols. I'm here for Rite-Aid and for Bosch Security together
3  with Lionel Lavenue from Finnegan.
4  MR. THORNLEY: Good afternoon, your Honor.
5  Jaden Thornley from Abram & Bayliss on behalf of HSN.
6  MR. COGGINS: Chris Coggins here from the Polsinelli
7  firm on behalf of U-Haul.
8  MR. ROVNER: Phil Rovner for Frontier.
9  MR. DAY: Back in the cheap seats, your Honor.
10 John Day for AT&T and Michael Morlock from Kilpatrick
11 Townsend.
12 MR. HORWITZ: Good afternoon, your Honor.
13 Rich Horwitz from Potter Anderson on behalf of eGain
14 and Reed Elsevier.
15 THE COURT: Welcome to you all.
16 I gather this is Pragmatus' request to have the
17 defendants narrow the number of asserted prior art, right?
18 MR. BELLOLI: That's correct, your Honor.
19 THE COURT: Okay. So you have three asserted patents
20 and you have 11 asserted claims between the three patents,
21 right?
22 MR. BELLOLI: Yes, and only four of those are
23 independent claims. There are four independent claims.
24 THE COURT: Okay. So, and the reason why you want to
25 have the claims narrowed, leaving aside there's a billion

6

1  combinations, the reason why you'd like to have them narrowed
2  now as opposed to some later time is what?
3  MR. BELLOLI: I think those two issues are part and
4  parcel of each other. The claim construction positions have
5  been solidified.
6  THE COURT: I'm sorry. When you say "the claim
7  construction positions have been solidified," in the back of my
8  mind, I think this is scheduled for Markman in early September.
9  MR. BELLOLI: The parties' positions, your Honor.
10 Clearly, your Honor has not made a claim construction.
11 THE COURT: No, no, no, but my point was you're now in
12 the process of briefing?
13 MR. BELLOLI: Correct, so we are actually halfway
14 through that process, so we provided our opening brief to them,
15 they've provided their responsive brief to us, and we're in the
16 reply, sur-reply stage now.
17 THE COURT: Okay. So what I'm wondering is, because in
18 a lot of cases I hear the parties tell me that while they're
19 doing the claim construction briefing, they're not doing
20 anything else, or not doing very much.
21 So, one of the things, because I guess what I'd say is,
22 for sure the number of asserted pieces of prior art is going to
23 come down significantly after claim construction, either by
24 defendants' choice or my choice.
25 What I'm wondering is, are you getting something from

7

1  doing it now as opposed to after the Markman is decided?
2  MR. BELLOLI: Yes, we are, and that's because discovery
3  closes around the time of the Markman Hearing, okay, and we may
4  not, depending on when your Honor issues the Markman Order, we
5  could already be into expert discovery.
6  So we would literally be finding out, for the first
7  time, what their prior art case really is, what -- how they're
8  putting it together with their expert report, depending on when
9  the Markman Order comes out.
10 THE COURT: So when is the first expert report on
11 invalidity due?
12 MR. BELLOLI: Someone may have the schedule. I think
13 it's October.
14 MS. JACOBS: Your Honor, if it is helpful, I have a
15 one- pager that has the main dates in the case?
16 THE COURT: Sure.
17 MR. BELLOLI: I think the over-arching point, though,
18 your Honor, they are -- you know, the plaintiffs are required on
19 an element-by-element basis to state their case.
20 And what I found amazing by the defendants response is,
21 they basically are saying, we don't have to give obvious
22 combinations even now at all, really to state their prior art
23 case, because they are asserting 103, and we can do that down
24 the road during expert discovery.
25 And then --

8

1  THE COURT: I didn't get that from what they wrote.
2  MR. BELLOLI: I think I did.
3  Their saying that they haven't done it on a
4  claim-by-claim basis.
5  THE COURT: Well, I thought actually what they said is,
6  more or less, on that is, you didn't bring this up on the agenda
7  item, and, so, they're not addressing it.
8  MR. BELLOLI: That's part and parcel of the issue, your
9  Honor, because when I sought a meet-and-confer on this I said,
10 we're going to move to narrow the prior art case to three prior
11 art references and three obviousness combinations, and the
12 obvious reason for that is because we're sitting here with this
13 and this.
14 And then, with any element inside here, can be combined
15 with any element here and it just creates -- we don't if their
16 prior art --
17 THE COURT: Yes, I get the way that works
18 mathematically.
19 MR. BELLOLI: Yes. And then, finally, they -- they
20 say, they don't have to do that. I think that's what it's
21 saying, because they're not going to address it, but that was
22 the point of this motion, because I said we need to narrow the
23 prior art case.
24 And then they propounded an interrogatory that asks us,
25 on an element-by-element basis, to explain why it's not obvious

9

1  in light of the all these combinations.  So, on the one hand
2  they want us to do what they're not willing to do, which is to
3  set forth their obvious case in this case right now, and pare
4  down the invalidity case, generally.
5      THE COURT:  Well, I'm guessing -- although I don't
6  think this is the reason we're here today -- you have a pretty
7  good reason not to be answering the contention as to why it's
8  nonobviousness if they haven't shown you why it's obvious,
9  right?
10      MR. BELLOLI:  Right, they asked me to do that.
11      THE COURT:  All right.
12      So, you say -- just getting back to what I think -- you
13  said fact discovery ends in October or when did you say it ends?
14      MR. BELLOLI:  September 19th, I believe it is.
15      THE COURT:  Did I change the date of when this Markman
16  is?
17      I'm not sure I understand what the sense is of having
18  the fact discovery ends two weeks ends before the Markman.
19      MR. BELLOLI:  I don't remember how this was done, but I
20  thought it was an agreed-upon schedule.  We submitted the order
21  and that was a convenient date for your Honor, but I don't
22  recall specifically.
23      But this wasn't -- the Markman Hearing I don't believe
24  was -- was moved after the original case schedule was put in
25  place some time last year.

10

1      THE COURT:  So, I guess what I'm wondering is, based on
2  how I understand how people do things, I could cut their amount
3  of combinations, prior art references down significantly.
4      Are you expecting to walk out of the Markman Hearing
5  and spend the next two weeks taking depositions?
6      MR. BELLOLI:  Well, we'll be taking depositions from
7  now till the close of fact discovery.
8      THE COURT:  So you've noticed a bunch of depositions?
9      MR. BELLOLI:  We've noticed 30(b)(6) of all defendants,
10  and as well as some fact witnesses for certain defendants.
11      THE COURT:  All right.
12      Ms. Jacobs, or whoever is speaking on behalf of the
13  defendants, what do you have to say?
14      MS. JACOBS:  Thank you, your Honor.
15      A couple of points.
16      First, as an initial matter, there's nothing
17  unreasonable about the invalidity contentions that defendants
18  have served did today.  I think there's really a little bit of a
19  misnomer about what is being alleged about those invalidity
20  contentions.
21      Pragmatus' brief -- letter brief talks about there
22  being dozens of references and that -- that's just not right,
23  and I have a chart that shows what it is that -- that has been
24  charted, your Honor.
25      THE COURT:  Well, before you start giving me charts --

11

1      MS. JACOBS:  Yes.
2      THE COURT:  -- let me just refresh my memory.
3      I thought that the -- when Pragmatus said that the
4  defendants, not counting Volkswagen, have charted 29 references
5  against two patents and 27 of those references against the third
6  patent.
7      So I take it, if I understand that sentence and the
8  math right, there's a total of 29 references in all, some of
9  which are not --well, two of which are not mentioned in
10 connection with one patent, and they say, Volkswagen has charted
11 the same 13 references for all three patents, so I take it
12 Volkswagen has a subset of what the other defendants have.
13     So the universe is 29 references; is that right?
14     MS. JACOBS:  That's exactly right, your Honor.  That
15 was the point that I was going to make.
16     THE COURT:  Two dozen.
17     MR. BELLOLI:  Well, a little over two dozen, yes.
18     THE COURT:  Okay.  Well, 29, I can understand that
19 concept.
20     MR. BELLOLI:  Yes.
21     THE COURT:  So okay.
22     And, I'm sorry Ms. Jacobs, because I thought you were
23 starting to say that they have overstated the number, or
24 something like that, maybe I misunderstood what you were saying.
25     MS. JACOBS:  Yes, no, I think your Honor calculated it

12

1  correctly.  I was concerned that the way that I read this letter
2  was making it sounds as if there had been references for each of
3  the patents, and I -- I think that that's me reading it led the
4  impression that there were --
5      THE COURT:  You thought it was additive.
6      MS. JACOBS:  That was additive as opposed to
7  cumulative, but, yes, I believe that is the state of affairs.
8      And I'll add that it's the same 29 references that have
9  been asserted in many of Pragmatus' other cases in other courts,
10 so there's really no surprises in terms of what is being
11 asserted.
12     On the obviousness combinations, this, as your Honor
13 can seem from Exhibit A to our letter, there was no prior
14 mention at all about obviousness combinations.
15     But I do want to make the point, and I don't want to
16 hand your Honor more paper if you don't want it, but our -- I
17 have them here just the cover pleading of the 45 pages, and far
18 -- far from being -- you'll recall we're only two months after
19 the -- the invalidity contentions were only served two months
20 ago.
21     What those 45 pages contain is a detailed recitation of
22 what the different features were that were known in the art and
23 identifies particular references that disclose those features,
24 and, therefore, provides a fair amount of detail about
25 obviousness combinations.  We don't think that should be part of

## Page 13

1  this discussion, because, literally, the first we heard of it
2  was in the opening letter.
3       But I just want to put on the table that we think our
4  disclosures have been fulsome and not unwieldy. This is also
5  the first we've heard about a concern about responding to the
6  interrogatory response. We had no request for an extension. We
7  had no request for any meet-and-confer about the interrogatory
8  response.
9       Certainly we would be willing to discuss a reasoned
10 response in light of the where we are. That was something that
11 came out entirely new today.
12      THE COURT: Well, so let's -- okay.
13      Thank you, Ms. Jacobs.
14      MS. JACOBS: Mm-hmm.
15      THE COURT: In terms of fact discovery, because not
16 withstanding the various topics that we talked about, I got from
17 the letters, particularly Pragmatus' letter, that their concern
18 was they don't do discovery in the time allotted with that many
19 different claims or prior art assertions.
20      Can you tell me at all about what kind of prior art
21 discovery, there's any hint is happening or might be happening?
22      MS. JACOBS: They are zero, your Honor.
23      These -- as I said, these references have been known to
24 Pragmatus, not just from this case, but from other cases, and to
25 our knowledge, certainly in this case, there's been no effort to

## Page 14

1  take any third-party discovery from any other prior artist, and
2  that's -- that's not unusual.
3       THE COURT: All right.
4       Mr. Belloli, I take it you agree there's no -- so far
5  you haven't done anything to do any discovery on --
6       MR. BELLOLI: Right, but the concern is a little
7  different.
8       We have the default rules in this district to tell you
9  what the other side's case is, and we don't know what their case
10 is.
11      My concern is not that I need to go depose the, you
12 know, the author of these 29 references, it's that state your
13 case, please, it is time. These are contentions. And if you
14 have obviousness combinations that you are going to rely upon,
15 state them. You can't say, go to look every book in the
16 library.
17      THE COURT: Okay.
18      So, in terms of whether or not defendants have done
19 this, short of looking at the immense stacks of papers that are
20 in front of you, is there any particular way -- is that what you
21 want me to do?
22      MR. BELLOLI: You -- you could. I think it would just
23 verify what I'm saying. You have 29 charts here and then you
24 can do, you know, any permutations that make it go from here to
25 Mars, but they need to state their case.

## Page 15

1       THE COURT: So in terms of, what you're saying is, or I
2  think, the defendants have adequately disclosed what they think
3  are revealed by these 29 prior art references, but they haven't
4  done, to your satisfaction, is say what combinations that they
5  would actually be arguing?
6       MR. BELLOLI: That's one part of it, and the other part
7  is we still think dozens of prior art -- primary references at
8  this stage of the case are still too many.
9       THE COURT: No, no, no, I got that part, but -- but in
10 terms of the -- the charting the contentions that you think are
11 not there are, essentially, combining these references, you know
12 what combinations are they relying on.
13      MR. BELLOLI: Right, they haven't stated the 103
14 claims, and they're clearing relying on an obviousness case
15 because --
16      THE COURT: I assume that's agreed, right?
17      MS. JACOBS: Yes.
18      THE COURT: Okay.
19      MR. BELLOLI: So what is that obviousness case?
20      THE COURT: All right.
21      And, so, just leaving aside, yes, you have a right to
22 know and that kind of thing, because I started off by saying
23 that I agree with you, they have too many references.
24      What I'm trying to figure out is, whether there's any
25 particular reason for me to be doing anything in terms of the

## Page 16

1  numbers of the references now, as opposed to a few months from
2  now when their selection, which references what they want to
3  rely on, will be better informed by, presumably, the claim
4  construction?
5       MR. BELLOLI: I have represented defendants and
6  plaintiffs equally throughout my career, and even when you have,
7  you may have dug up this much prior art, you know before your
8  claim construction comes down, whether there's three or five.
9  It's not 29. You know you're not going to be going in the
10 direction of most of those.
11      For them to say that they are seriously considering all
12 29 of these at this point, I would -- I find that hard to
13 believe. I think their case is truly narrowed more than that.
14      THE COURT: Well, have you said that, Ms. Jacobs?
15      MS. JACOBS: I don't believe so.
16      MR. BELLOLI: I think it's implicit, because they are
17 not willing to narrow it at this point in time.
18      MS. JACOBS: I think what we've addressed is what the
19 appropriate time would be to have that discussion and have
20 offered to have that discussion at a later stage in the case.
21      THE COURT: All right.
22      Here's what I'm inclined to do, because I do think,
23 even at this stage of the case, given -- and, you know, various
24 people, presumably the defendants were citing things that I had
25 said in other hearings like this about what a reasonable number

**17**

1  was, and I have said before -- the last one was Zynga where
2  they, you know, maybe they had a similar number of -- of prior
3  art references, but at the time Zynga, or the plaintiff had, I
4  don't know, like 30 asserted claims. There were a lot more
5  claims than Pragmatus has.
6      So I think Pragmatus comes with much cleaner hands
7  towards requesting a reduction in the number of references,
8  because they have a very reasonable number of asserted claims at
9  this point. And, in fact, I saw the representation that they
10 were going to reduce somewhere before trial down to, I don't
11 know, four claims, or six claims, something like that.
12     And I do think that post-Markman, you know, a
13 significant reduction is due. I'm just not entirely sure what
14 the point is of chopping off a few right now.
15     MS. JACOBS: That's our concern, your Honor.
16     There's really no benefit to doing it now, because
17 we're in the middle of Markman already. Our Markman positions
18 are outline.
19     But if we have the benefit of the Court's Markman
20 Order, and Pragmatus has indicated it's going to reduce its
21 claims to eight after the Markman Order, which will mean we
22 won't be needing to assert references that would relate to
23 claims that aren't being asserted, that discovery for us really
24 has not taken place.
25     And we also do intend -- some of these references are

**18**

1  very old, and because we don't have an answer to that
2  interrogatory of any kind, we don't know how they're challenging
3  our references or not, so we think it's a little bit unfair as
4  to --
5      THE COURT: Well, I'm sorry, but the interrogatory that
6  you are mentioning --
7      MS. JACOBS: Mm-hmm.
8      THE COURT: -- says what's your nonobviousness
9  position?
10     MS. JACOBS: No, your Honor, it's asking for --
11     MR. FLYNN: It's very specific, but it's -- it's asking
12 them only to chart the combination of references that defendants
13 have disclosed.
14     So we're not asking them to go through 29 times 29
15 reference. We're asking for those instances where we did say,
16 here's an element of your patents and here's five or six
17 references that disclose that, tell us why these references
18 don't, you know, wouldn't in combination disclose those
19 elements.
20     THE COURT: So you have the chart that then says, if
21 you take the one, and you take the five or six, that together
22 makes for obviousness?
23     MR. FLYNN: Well, what we've done, your Honor is, is in
24 our references we said in sort of broad categories, here are --
25 here are elements of your patents, for example, the internet

**19**

1  worldwide web customer service and technical support, and here
2  are reference that we believe in combination address these, and
3  it's not all 29 references. It's not dozens and dozens of
4  references, but we -- what they want us to do is actually chart
5  on an element-by-element basis every possible obviousness
6  combination, and I don't think we're at that stage of the case
7  yet where that makes sense doing. We certainly are not asking
8  them to do the kind of work that -- that they're asking us to
9  do.
10     We're saying of those things that we have disclosed to
11 you, for the element-by-element claims for anticipation that we
12 charted in the -- in the charts, tell us why on an
13 element-by-element --
14     THE COURT: Anticipation?
15     MS. JACOBS: Yes.
16     MR. FLYNN: For the claim charts that we did.
17     THE COURT: This is the first time that I heard the
18 word "anticipation." I just was making sure.
19     MS. JACOBS: Yes, your Honor.
20     The interrogatory is asking for each prior art
21 reference that has been charted.
22     So, yes, for the anticipation to disclose why it is
23 that they disagree with any claim element that's -- that's not
24 disclosed.
25     THE COURT: All right.

**20**

1  I understand anticipation, because you don't need a
2  combination.
3      MS. JACOBS: Right, correct.
4      MR. FLYNN: We're asking them to give back --
5      THE COURT: But I don't understand, since Mr. Belloli
6  said "obviousness," I'm not necessarily understanding him to
7  have objected to that.
8      I mean I don't, you know, I don't know what we're
9  talking about exactly, but to the extent that you have charted
10 anticipation and now say what's non-anticipation, you know, a
11 minute ago you were talking about nonobviousness.
12     MR. BELLOLI: Well, I agree. That's not the problem,
13 but the interrogatory, I think is fair reading of it, asks you
14 to state your validity position based upon any combination
15 stated and --
16     THE COURT: Well, and, so, actually that's part of the
17 reason why I appreciate Ms. Jacobs providing the letter that
18 says what the dispute is about, because then we don't spend time
19 here arguing about whether we're talking obviousness or
20 anticipation, you talk to each other about what's meant in the
21 interrogatory.
22     If they're looking for anticipation, they've charted
23 anticipation. You know, you don't have much of a reason to be
24 saying, I can't respond to anticipation, then you're not here
25 talking to me about obviousness, where you have a much better

### Page 21

1 reason not to respond based on what I'm hearing.
2     I think that's something you can all be talking to each
3 other quite a bit in the next couple of months, and you can talk
4 about that, and you can talk about whatever charting they have,
5 or haven't done with regards to obviousness.
6     In terms of the number of references that are asserted,
7 remind me, Mr. Belloli, you said after Markman you were going to
8 cut down your number of claims to what?
9     MR. BELLOLI:  Eight.
10     THE COURT:  Eight, okay.
11     MR. BELLOLI:  We'll go to trial with no more than six.
12     THE COURT:  To me the difference between eight and six
13 is pretty immaterial.
14     MR. BELLOLI:  I think the difference between six and 11
15 is pretty immaterial.  We made an effort -- usually you're
16 getting, like your Honor said of plaintiffs, sometimes with 80,
17 200 claims, we've made an effort to make this a fairly
18 reasonable case.
19     THE COURT:  All right.
20     So here's what I'm thinking.
21     When you get the Markman, how soon after the Markman
22 are you going to be ready to go to eight?
23     MR. BELLOLI:  A week.
24     THE COURT:  Okay.  A week after they go to eight, I
25 want the defendants to go to no more than five references per

### Page 22

1 patent.
2     MS. JACOBS:  The problem -- we would prefer a total
3 number, your Honor, because a lot of the references --
4     THE COURT:  Okay.
5     15 total?  Or, actually, wait.
6     Why do you want a total number?
7     MS. JACOBS:  Because some of the references may go to
8 multiple patents --
9     THE COURT:  Well --
10     MS. JACOBS:  -- so maybe I'm not understanding what
11 your Honor is saying.
12     THE COURT:  Well, so what I was saying was for patent
13 one, you've got five references.  For patent two, you've got
14 five.  They can be the same five as for patent one, or they can
15 be different ones, but then you can't use them for patent one,
16 you can only use them for two.
17     So if you've got -- because I don't know how related
18 these patents are -- but if you've got five really good
19 references that kind of preempt the field, then you can use them
20 over and over again, and you've got five.
21     If you've got, you know, one patent is for -- I'm going
22 to say file storage, because that's a word that I heard in the
23 last 24 hours, and one patent is for architecture, one patent is
24 for something else, and, so, you really have different prior art
25 references -- you know, I don't think you do, because you have

### Page 23

1 asserted the same 29 against patent one and patent two, and 27
2 against patent three, so I think there's probably a lot of
3 overlap.
4     You can be the judge of which ones you want to use,
5 and, so, basically, just do your five best against each patent.
6     MS. JACOBS:  The problem with that, your Honor, is
7 that's a really severe reduction from 29 to five at a stage when
8 things are still before expert discovery, and this is still a
9 fairly large group of different defendants who don't have
10 identical products, and may have different views, and that --
11     THE COURT:  Well, but the product shouldn't matter when
12 it comes to invalidity.
13     MS. JACOBS:  Well, it does have some -- some
14 relationship to the extent, if you want to make the point that
15 your product is doing the same thing as what the prior art was
16 doing.  It just goes to show that each defendant may have
17 different views about what the best prior art is.
18     THE COURT:  Well, you know what?
19     The coordination between the defendants, that's a point
20 in the sense of Mr. Belloli and his client, they only have to
21 have a telephone call to resolve it.  You all, I guess, maybe a
22 telephone call, but a lot of different moving parts.
23     So part what I'm not doing, and I actually wrote down
24 to do, but I've decided I don't think it's is such a hot idea
25 was, I was going to make you reduce some now, but that's part of

### Page 24

1 reason I'm setting the schedule now is so you can be thinking
2 about it.
3     I will say that you have two weeks after theirs,
4 because I do think trying to corral your entire group into one
5 mindset is a -- I understand that's --
6     MS. JACOBS:  Well, and it may be, your Honor, that a
7 phased approach, I do think that getting down to that low of a
8 number of group this size at that stage of the case, it may be
9 that perhaps we could do something like follow the Federal
10 Circuit Model and get down to the 15 or 20 references.
11     THE COURT:  Actually, that is the Federal Circuit
12 model.
13     MS. JACOBS:  Right.  And then do -- but a total
14 reference.  I think we would be more comfortable with a total
15 reference.  And then after expert --
16     THE COURT:  Actually, I think -- and I've got the
17 Federal Circuit thing with me -- I think the way they do it is I
18 think -- well, let's find out.
19     The version I have -- all right.
20     So, here's what I was thinking.
21     The model rule that I have -- and I haven't checked to
22 see whether they've changed it -- of course, they didn't ever
23 officially adopt it.
24     MS. JACOBS:  Right.
25     THE COURT:  Says, the claimant shall, you know, final

25

1  election of circuit claims, get down to a total of 16. Of
2  course, they're already under that.
3      Then not later than 14 days.
4      After that, the defendant shall finally elect a certain
5  prior art. It shall be no more than five asserted prior art
6  references per patent from the among the previously identified,
7  and no more than a total of 20.
8      Well, so, actually -- so I actually, assuming this is
9  the actual correct model order, I'm giving you exactly what the
10 model suggests, notwithstanding the fact that the plaintiff
11 would be well under what the model suggests.
12     MS. JACOBS: Yes, and my concern with that is only it
13 is the model, and we are differently filed cases. And my
14 concern with -- I think we're fine on the other end of that,
15 which is the total of 20 references, which would be fine.
16     It's the narrowing of five per patent which -- which
17 could be very difficult with a group this size.
18     THE COURT: Well, let me offer this up, because you are
19 different defendants.
20     Obviously, I appreciate your working together, but I
21 think the remedy, so to speak is, if your client wants to offer
22 prior art A, B, C, D, and E, and Mr. Horwitz's client wants to
23 offer Z, X, Y, P, and Q, you don't have to offer the same five,
24 but -- but just because you have a lot of different interests,
25 doesn't mean you could just kind of amalgamate them all.

26

1  So, if he thinks, for his client, there are five
2  references for the first patent, which are the ones that work
3  for him, they're different than the ones that work for you, you
4  know, I don't think I've entered an order that says you have to
5  -- that you can't take different positions.
6      And then -- you know, and I think that probably has the
7  -- the incentive is right, because if Mr. Horwitz's client wants
8  to chart and go on five different ones, I can only imagine they
9  would do that, because they thought that was in their best
10 interest. You think you do what is in your best interest. If
11 that then puts more of a burden on Mr. Belloli, well, he's the
12 one that sued both of you, but I don't see -- I don't see an
13 incentive for Mr. Horwitz, you know, let's keep all 29 in the
14 case by just dividing them up, there is no incentive to do that,
15 because one of you is going to get the loser ones maybe, you
16 know?
17     So --
18     MR. BELLOLI: I think five is appropriate, because like
19 you said, I think the reality of the matter is, there may be
20 some disagreement as to which ones they pick.
21     I have, with today's feeling, it would probably be the
22 same five, or a substantial overlap for most of them.
23     THE COURT: All right.
24     So, you know, as the model order says, I'm going to put
25 in something that says, you know, if -- if, essentially,

27

1  something happens, so that you are big-time hurting despite
2  diligence and, you know, you have good cause to change what you
3  are doing down the road, you can seek to modify that, all right?
4      So I may not have made everybody happy, but I think
5  that's what I want to do right now is, the reduction by
6  plaintiff after -- one week after Markman, reduction by the
7  defendants, which doesn't have to be uniform on the defendants,
8  two weeks after they make their reduction. And, you know, if
9  they go from eight to six somewhere before trial, I'm not going
10 to make you go from five to four.
11     I think, when you're getting down to those numbers,
12 you'll make strategic choices as to what you think results in
13 the best presentation. And I would encourage you to talk about
14 answering interrogatories with each other and see if you can't
15 work that out.
16     But if you can't, you can come back.
17     MR. BELLOLI: Thank you, your Honor.
18     THE COURT: Mr. Farnan, can I ask you that you submit a
19 proposed order to capture what I just said, and see if we can
20 get all the defendants to agree to the form and submit it?
21     MR. FARNAN: Yes, your Honor.
22     THE COURT: Okay. All right.
23     Well, thank you very much, and let me give back -- let
24 me give back the lovely captioned and waive Pragmatus' cases
25 schedule.

28

1  All right.
2      And I have some meeting with somebody else at 4
3  o'clock.
4      Mr. Farnan, are you part of that?
5      MR. FARNAN: I think so.
6      THE COURT: Okay. Well, I'll see all of you soon.
7      MS. JACOBS: Thank you, your Honor.
8      MR. BELLOLI: Thank you, your Honor.
9      (The proceedings adjourned at 4:03 p.m.)
10         * * *

# 1

**103** [2] - 7:23, 15:13
**11** [2] - 5:20, 21:14
**12-1533** [1] - 4:10
**12-1533-RGA** [1] - 1:4
**12-1559** [1] - 4:11
**13** [1] - 11:11
**14** [1] - 25:3
**15** [2] - 22:5, 24:10
**16** [1] - 25:1
**19th** [1] - 9:14

# 2

**20** [3] - 24:10, 25:7, 25:15
**200** [1] - 21:17
**2014** [1] - 1:5
**24** [1] - 22:23
**26** [1] - 1:5
**27** [2] - 11:5, 23:1
**29** [16] - 11:4, 11:8, 11:13, 11:18, 12:8, 14:12, 14:23, 15:3, 16:9, 16:12, 18:14, 19:3, 23:1, 23:7, 26:13

# 3

**30** [1] - 17:4
**30(b)(6** [1] - 10:9
**3:30** [1] - 1:7
**3:39** [1] - 4:3

# 4

**4** [1] - 28:2
**45** [2] - 12:17, 12:21
**4:03** [1] - 28:9

# 8

**80** [1] - 21:16

# A

**Abram** [1] - 5:5
**ABRAMS** [1] - 2:19
**Action** [2] - 4:9, 4:11
**actual** [1] - 25:9
**add** [1] - 12:8
**additional** [1] - 4:25
**additive** [2] - 12:5, 12:6
**address** [2] - 8:21, 19:2
**addressed** [1] - 16:18
**addressing** [1] - 8:7
**adequately** [1] - 15:2
**adjourned** [1] - 28:9
**adopt** [1] - 24:23
**affairs** [1] - 12:7
**afternoon** [5] - 4:5, 4:6, 4:22, 5:4, 5:12
**agenda** [1] - 8:6
**ago** [2] - 12:20, 20:11
**agree** [4] - 14:4, 15:23, 20:12, 27:20
**agreed** [2] - 9:20, 15:16
**agreed-upon** [1] - 9:20
**Aid** [2] - 2:17, 5:2
**al** [1] - 1:10
**ALBERTI** [1] - 2:1
**alleged** [1] - 10:19
**allotted** [1] - 13:18
**amalgamate** [1] - 25:25
**amazing** [1] - 7:20
**America** [1] - 4:11
**amount** [2] - 10:2, 12:24
**ANDERSON** [2] - 3:5, 3:9
**Anderson** [1] - 5:13
**ANDREWS** [1] - 1:17
**answer** [1] - 18:1
**answering** [2] - 9:7, 27:14
**anticipation** [11] - 19:11, 19:14, 19:18, 19:22, 20:1, 20:10, 20:20, 20:22, 20:23, 20:24
**APPEARANCES** [1] - 1:21
**appreciate** [2] - 20:17, 25:20
**approach** [1] - 24:7
**appropriate** [2] - 16:19, 26:18
**arching** [1] - 7:17
**architecture** [1] - 22:23
**arguing** [2] - 15:5, 20:19
**ARSHT** [2] - 2:6, 2:11
**art** [23] - 5:17, 6:22, 7:7, 7:22, 8:10, 8:11, 8:16, 8:23, 10:3, 12:22, 13:19, 13:20, 15:3, 15:7, 16:7, 17:3, 19:20, 22:24, 23:15, 23:17, 25:5, 25:22
**artist** [1] - 14:1
**ASHBY** [1] - 2:23
**aside** [2] - 5:25, 15:21
**assert** [1] - 17:22
**asserted** [12] - 5:17, 5:19, 5:20, 6:22, 12:9, 12:11, 17:4, 17:8, 17:23, 21:6, 23:1, 25:5
**asserting** [1] - 7:23
**assertions** [1] - 13:19
**assume** [1] - 15:16
**assuming** [1] - 25:8
**AT&T** [4] - 1:10, 3:3, 4:9, 5:10
**author** [1] - 14:12

# B

**based** [3] - 10:1, 20:14, 21:1
**basis** [4] - 7:19, 8:4, 8:25, 19:5
**BAYLISS** [1] - 2:19
**Bayliss** [1] - 5:5
**BEFORE** [1] - 1:17
**behalf** [4] - 5:5, 5:7, 5:13, 10:12
**BELLOLI** [35] - 2:3, 4:14, 5:18, 5:22, 6:3, 6:9, 6:13, 7:2, 7:12, 7:17, 8:2, 8:8, 8:19, 9:10, 9:14, 9:19, 10:6, 10:9, 11:17, 11:20, 14:6, 14:22, 15:6, 15:13, 15:19, 16:5, 16:16, 20:12, 21:9, 21:11, 21:14, 21:23, 26:18, 27:17, 28:8
**Belloli** [7] - 4:12, 4:17, 14:4, 20:5, 21:7, 23:20, 26:11
**benefit** [2] - 17:16, 17:19
**best** [5] - 23:5, 23:17, 26:9, 26:10, 27:13
**better** [2] - 16:3, 20:25
**between** [4] - 5:20, 21:12, 21:14, 23:19
**big** [1] - 27:1
**big-time** [1] - 27:1
**billion** [1] - 5:25
**bit** [3] - 10:18, 18:3, 21:3
**book** [1] - 14:15
**Bosch** [2] - 2:17, 5:2

**BRIAN** [1] - 1:24
**brief** [4] - 6:14, 6:15, 10:21
**briefing** [2] - 6:12, 6:19
**bring** [1] - 8:6
**broad** [1] - 18:24
**bunch** [1] - 10:8
**burden** [1] - 26:11
**BY** [13] - 1:24, 2:2, 2:3, 2:7, 2:8, 2:12, 2:16, 2:20, 2:24, 3:2, 3:6, 3:10, 3:14

# C

**CA** [1] - 1:4
**calculated** [1] - 11:25
**captioned** [3] - 4:8, 4:9, 27:24
**capture** [1] - 27:19
**career** [1] - 16:6
**case** [26] - 7:7, 7:15, 7:19, 7:23, 8:10, 8:23, 9:3, 9:4, 9:24, 13:24, 13:25, 14:9, 14:13, 14:25, 15:8, 15:14, 15:19, 16:13, 16:20, 16:23, 19:6, 21:18, 24:8, 26:14
**cases** [5] - 6:18, 12:9, 13:24, 25:13, 27:24
**categories** [1] - 18:24
**certain** [2] - 10:10, 25:4
**certainly** [3] - 13:9, 13:25, 19:7
**challenging** [1] - 18:2
**change** [2] - 9:15, 27:2
**changed** [1] - 24:22
**chart** [5] - 10:23, 18:12, 18:20, 19:4, 26:8
**charted** [7] - 10:24, 11:4, 11:10, 19:12, 19:21, 20:9, 20:22
**charting** [2] - 15:10, 21:4
**charts** [4] - 10:25, 14:23, 19:12, 19:16
**cheap** [1] - 5:9
**checked** [1] - 24:21
**choice** [2] - 6:24
**choices** [1] - 27:12
**chopping** [1] - 17:14

**Chris** [1] - 5:6
**CHRISTOPHER** [1] - 3:14
**Circuit** [3] - 24:10, 24:11, 24:17
**circuit** [1] - 25:1
**citing** [1] - 16:24
**Civil** [2] - 4:9, 4:11
**claim** [11] - 6:4, 6:6, 6:10, 6:19, 6:23, 8:4, 16:3, 16:8, 19:16, 19:23
**claim-by-claim** [1] - 8:4
**claimant** [1] - 24:25
**claims** [17] - 5:20, 5:23, 5:25, 13:19, 15:14, 17:4, 17:5, 17:8, 17:11, 17:21, 17:23, 19:11, 21:8, 21:17, 25:1
**cleaner** [1] - 17:6
**clearing** [1] - 15:14
**clearly** [1] - 6:10
**client** [5] - 23:20, 25:21, 25:22, 26:1, 26:7
**close** [1] - 10:7
**closes** [1] - 7:3
**COGGINS** [2] - 3:14, 5:6
**Coggins** [1] - 5:6
**combination** [6] - 18:12, 18:18, 19:2, 19:6, 20:2, 20:14
**combinations** [11] - 6:1, 7:22, 8:11, 9:1, 10:3, 12:12, 12:14, 12:25, 14:14, 15:4, 15:12
**combined** [1] - 8:14
**combining** [1] - 15:11
**comfortable** [1] - 24:14
**concept** [1] - 11:19
**concern** [7] - 13:5, 13:17, 14:6, 14:11, 17:15, 25:12, 25:14
**concerned** [1] - 12:1
**confer** [2] - 8:9, 13:7
**connection** [1] - 11:10
**considering** [1] - 16:11
**construction** [7] - 6:4, 6:7, 6:10, 6:19, 6:23, 16:4, 16:8
**contain** [1] - 12:21
**contention** [1] - 9:7

**contentions** [5] - 10:17, 10:20, 12:19, 14:13, 15:10
**convenient** [1] - 9:21
**coordination** [1] - 23:19
**corral** [1] - 24:4
**correct** [4] - 5:18, 6:13, 20:3, 25:9
**correctly** [1] - 12:1
**CORROON** [2] - 3:5, 3:9
**counting** [1] - 11:4
**couple** [2] - 10:15, 21:3
**course** [2] - 24:22, 25:2
**COURT** [64] - 1:1, 4:5, 4:7, 4:16, 4:19, 5:15, 5:19, 5:24, 6:6, 6:11, 6:17, 7:10, 7:16, 8:1, 8:5, 8:17, 9:5, 9:11, 9:15, 10:1, 10:8, 10:11, 10:25, 11:2, 11:16, 11:18, 11:21, 12:5, 13:12, 13:15, 14:3, 14:17, 15:1, 15:9, 15:16, 15:18, 15:20, 16:14, 16:21, 18:5, 18:8, 18:20, 19:14, 19:17, 19:25, 20:5, 20:16, 21:10, 21:12, 21:19, 21:24, 22:4, 22:9, 22:12, 23:11, 23:18, 24:11, 24:16, 24:25, 25:18, 26:23, 27:18, 27:22, 28:6
**court** [2] - 3:19, 4:13
**Court** [1] - 3:20
**Court's** [1] - 17:19
**courts** [1] - 12:9
**cover** [1] - 12:17
**creates** [1] - 8:15
**cumulative** [1] - 12:7
**customer** [1] - 19:1
**cut** [2] - 10:2, 21:8

**D**

**date** [2] - 9:15, 9:21
**dates** [1] - 7:15
**DAY** [4] - 2:1, 2:2, 2:24, 5:9
**days** [1] - 25:3
**decided** [2] - 7:1, 23:24
**default** [1] - 14:8
**Defendant** [4] - 2:21, 3:3, 3:7, 3:15

**defendant** [2] - 23:16, 25:4
**defendants** [22] - 4:20, 4:25, 5:17, 7:20, 10:9, 10:10, 10:13, 10:17, 11:4, 11:12, 14:18, 15:2, 16:5, 16:24, 18:12, 21:25, 23:9, 23:19, 25:19, 27:7, 27:20
**Defendants** [5] - 1:12, 2:6, 2:9, 2:17, 3:11
**defendants'** [1] - 6:24
**DELAWARE** [1] - 1:2
**depose** [1] - 14:11
**depositions** [3] - 10:5, 10:6, 10:8
**despite** [1] - 27:1
**detail** [1] - 12:24
**detailed** [1] - 12:21
**DIBBS** [1] - 3:19
**difference** [2] - 21:12, 21:14
**different** [14] - 12:22, 13:19, 14:7, 22:15, 22:24, 23:9, 23:10, 23:17, 23:22, 25:19, 25:24, 26:3, 26:5, 26:8
**differently** [1] - 25:13
**difficult** [1] - 25:17
**diligence** [1] - 27:2
**direction** [1] - 16:10
**disagree** [1] - 19:23
**disagreement** [1] - 26:20
**disclose** [4] - 12:23, 18:17, 18:18, 19:22
**disclosed** [4] - 15:2, 18:13, 19:10, 19:24
**disclosures** [1] - 13:4
**DISCOVERY** [1] - 1:16
**discovery** [13] - 7:2, 7:5, 7:24, 9:13, 9:18, 10:7, 13:15, 13:18, 13:21, 14:1, 14:5, 17:23, 23:8
**discuss** [1] - 13:9
**discussion** [3] - 13:1, 16:19, 16:20
**DISPUTE** [1] - 1:16
**dispute** [1] - 20:18
**district** [1] - 14:8
**DISTRICT** [3] - 1:1, 1:2, 1:18

**dividing** [1] - 26:14
**done** [7] - 8:3, 9:19, 14:5, 14:18, 15:4, 18:23, 21:5
**down** [13] - 6:23, 7:23, 9:4, 10:3, 16:8, 17:10, 21:8, 23:23, 24:7, 24:10, 25:1, 27:3, 27:11
**dozen** [2] - 11:16, 11:17
**dozens** [4] - 10:22, 15:7, 19:3
**due** [2] - 7:11, 17:13
**dug** [1] - 16:7
**DUNNER** [1] - 2:15
**during** [1] - 7:24

**E**

**early** [1] - 6:8
**effort** [3] - 13:25, 21:15, 21:17
**eGain** [2] - 3:11, 5:13
**eight** [7] - 17:21, 21:9, 21:10, 21:12, 21:22, 21:24, 27:9
**either** [1] - 6:23
**elect** [1] - 25:4
**election** [1] - 25:1
**element** [14] - 7:19, 8:14, 8:15, 8:25, 18:16, 19:5, 19:11, 19:13, 19:23
**element-by-element** [5] - 7:19, 8:25, 19:5, 19:11, 19:13
**elements** [2] - 18:19, 18:25
**ELIZABETH** [1] - 2:2
**Elsevier** [2] - 3:11, 5:14
**encourage** [1] - 27:13
**end** [1] - 25:14
**ends** [4] - 9:13, 9:18
**entered** [1] - 26:4
**entire** [1] - 24:4
**entirely** [2] - 13:11, 17:13
**equally** [1] - 16:6
**ESQ** [13] - 1:24, 2:2, 2:3, 2:7, 2:8, 2:12, 2:16, 2:20, 2:24, 3:2, 3:6, 3:10, 3:14
**essentially** [2] - 15:11, 26:25
**et** [1] - 1:10
**exactly** [3] - 11:14,

20:9, 25:9
**example** [1] - 18:25
**Exhibit** [1] - 12:13
**expecting** [1] - 10:4
**expert** [6] - 7:5, 7:8, 7:10, 7:24, 23:8, 24:15
**explain** [1] - 8:25
**extension** [1] - 13:6
**extent** [2] - 20:9, 23:14

**F**

**fact** [7] - 9:13, 9:18, 10:7, 10:10, 13:15, 17:9, 25:10
**fair** [2] - 12:24, 20:13
**fairly** [2] - 21:17, 23:9
**far** [3] - 12:17, 12:18, 14:4
**FARABOW** [1] - 2:14
**Farnan** [4] - 4:14, 4:17, 27:18, 28:4
**FARNAN** [5] - 1:23, 1:24, 4:18, 27:21, 28:5
**features** [2] - 12:22, 12:23
**Federal** [3] - 24:9, 24:11, 24:17
**FEINBERG** [1] - 2:1
**few** [2] - 16:1, 17:14
**field** [1] - 22:19
**figure** [1] - 15:24
**file** [1] - 22:22
**filed** [1] - 25:13
**final** [1] - 24:25
**finally** [2] - 8:19, 25:4
**fine** [2] - 25:14, 25:15
**FINNEGAN** [1] - 2:14
**Finnegan** [1] - 5:3
**firm** [1] - 5:7
**first** [7] - 7:6, 7:10, 10:16, 13:1, 13:5, 19:17, 26:2
**five** [19] - 16:8, 18:16, 18:21, 21:25, 22:13, 22:14, 22:18, 22:20, 23:5, 23:7, 25:5, 25:16, 25:23, 26:1, 26:8, 26:18, 26:22, 27:10
**FLYNN** [7] - 2:8, 2:12, 5:1, 18:11, 18:23, 19:16, 20:4
**Flynn** [2] - 4:24, 5:1

**follow** [1] - 24:9
**follows** [1] - 4:3
**FOR** [1] - 1:2
**form** [1] - 27:20
**forth** [1] - 9:3
**four** [4] - 5:22, 5:23, 17:11, 27:10
**front** [1] - 14:20
**Frontier** [2] - 3:7, 5:8
**fulsome** [1] - 13:4

**G**

**GARRETT** [1] - 2:14
**gather** [1] - 5:16
**GEDDES** [1] - 2:23
**generally** [1] - 9:4
**given** [1] - 16:23
**group** [4] - 23:9, 24:4, 24:8, 25:17
**Group** [1] - 4:10
**guess** [3] - 6:21, 10:1, 23:21
**guessing** [1] - 9:5

**H**

**halfway** [1] - 6:13
**hand** [2] - 9:1, 12:16
**hands** [1] - 17:6
**happy** [1] - 27:4
**hard** [1] - 16:12
**Haul** [2] - 3:15, 5:7
**hear** [1] - 6:18
**heard** [4] - 13:1, 13:5, 19:17, 22:22
**hearing** [1] - 21:1
**Hearing** [3] - 7:3, 9:23, 10:4
**hearings** [1] - 16:25
**helpful** [1] - 7:14
**HENDERSON** [1] - 2:14
**hint** [1] - 13:21
**hmm** [2] - 13:14, 18:7
**Honor** [33] - 4:22, 5:1, 5:4, 5:9, 5:12, 5:18, 6:9, 6:10, 7:4, 7:14, 7:18, 8:9, 9:21, 10:14, 10:24, 11:14, 11:25, 12:12, 12:16, 13:22, 17:15, 18:10, 18:23, 19:19, 21:16, 22:3, 22:11, 23:6, 24:6, 27:17, 27:21, 28:7, 28:8
**HONORABLE** [1] - 1:17
**HORWITZ** [2] - 3:10,

5:12
**Horwitz** [2] - 5:13, 26:13
**Horwitz's** [2] - 25:22, 26:7
**hot** [1] - 23:24
**hours** [1] - 22:23
**HSN** [2] - 2:21, 5:5
**hurting** [1] - 27:1

### I

**idea** [1] - 23:24
**identical** [1] - 23:10
**identified** [1] - 25:6
**identifies** [1] - 12:23
**imagine** [1] - 26:8
**immaterial** [2] - 21:13, 21:15
**immense** [1] - 14:19
**implicit** [1] - 16:16
**impression** [1] - 12:4
**INC** [1] - 1:10
**incentive** [3] - 26:7, 26:13, 26:14
**inclined** [1] - 16:22
**independent** [2] - 5:23
**indicated** [1] - 17:20
**informed** [1] - 16:3
**initial** [1] - 10:16
**inside** [1] - 8:14
**instances** [1] - 18:15
**intend** [1] - 17:25
**interest** [2] - 26:10
**interests** [1] - 25:24
**internet** [1] - 18:25
**interrogatories** [1] - 27:14
**interrogatory** [8] - 8:24, 13:6, 13:7, 18:2, 18:5, 19:20, 20:13, 20:21
**invalidity** [6] - 7:11, 9:4, 10:17, 10:19, 12:19, 23:12
**issue** [1] - 8:8
**issues** [2] - 6:3, 7:4
**item** [1] - 8:7

### J

**JACOBS** [30] - 2:7, 4:6, 4:22, 7:14, 10:14, 11:1, 11:14, 11:25, 12:6, 13:14, 13:22, 15:17, 16:15, 16:18, 17:15, 18:7, 18:10, 19:15, 19:19, 20:3, 22:2, 22:7, 22:10, 23:6, 23:13, 24:6, 24:13, 24:24, 25:12, 28:7
**Jacobs** [7] - 4:21, 4:23, 10:12, 11:22, 13:13, 16:14, 20:17
**Jaden** [1] - 5:5
**JASON** [1] - 2:20
**John** [1] - 5:10
**JOHN** [1] - 2:24
**judge** [1] - 23:4
**JUDGE** [1] - 1:18
**June** [1] - 1:5

### K

**Karen** [1] - 4:23
**KAREN** [1] - 2:7
**keep** [1] - 26:13
**KILPATRICK** [1] - 3:1
**Kilpatrick** [1] - 5:10
**kind** [6] - 13:20, 15:22, 18:2, 19:8, 22:19, 25:25
**knowledge** [1] - 13:25
**known** [2] - 12:22, 13:23

### L

**L's** [1] - 4:14
**large** [1] - 23:9
**last** [3] - 9:25, 17:1, 22:23
**LAVENUE** [1] - 2:16
**Lavenue** [1] - 5:3
**least** [1] - 4:7
**leaving** [2] - 5:25, 15:21
**led** [1] - 12:3
**IEONARD** [1] - 3:19
**less** [1] - 8:6
**letter** [6] - 10:21, 12:1, 12:13, 13:2, 13:17, 20:17
**letters** [2] - 4:7, 13:17
**library** [1] - 14:16
**light** [2] - 9:1, 13:10
**Lionel** [1] - 5:3
**LIONEL** [1] - 2:16
**literally** [2] - 7:6, 13:1
**litigation** [1] - 4:8
**LLC** [2] - 1:4, 4:8
**LLP** [1] - 1:23
**look** [1] - 14:15
**looking** [2] - 14:19, 20:22
**loser** [1] - 26:15
**lovely** [1] - 27:24
**low** [1] - 24:7

### M

**main** [1] - 7:15
**MARC** [1] - 2:3
**Markman** [18] - 6:8, 7:1, 7:3, 7:4, 7:9, 9:15, 9:18, 9:23, 10:4, 17:12, 17:17, 17:19, 17:21, 21:7, 21:21, 27:6
**Mars** [1] - 14:25
**math** [1] - 11:8
**mathematically** [1] - 8:18
**matter** [3] - 10:16, 23:11, 26:19
**mean** [3] - 17:21, 20:8, 25:25
**meant** [1] - 20:20
**meet** [2] - 8:9, 13:7
**meet-and-confer** [2] - 8:9, 13:7
**meeting** [1] - 28:2
**memory** [1] - 11:2
**mention** [1] - 12:14
**mentioned** [1] - 11:9
**mentioning** [1] - 18:6
**MICHAEL** [3] - 2:8, 2:12, 3:2
**Michael** [3] - 4:24, 5:1, 5:10
**middle** [1] - 17:17
**might** [2] - 4:14, 13:21
**mind** [1] - 6:8
**mindset** [1] - 24:5
**minute** [1] - 20:11
**misnomer** [1] - 10:19
**misunderstood** [1] - 11:24
**Model** [1] - 24:10
**model** [7] - 24:12, 24:21, 25:9, 25:10, 25:11, 25:13, 26:24
**modify** [1] - 27:3
**months** [4] - 12:18, 12:19, 16:1, 21:3
**Morlock** [1] - 5:10
**MORLOCK** [1] - 3:2
**MORRIS** [2] - 2:6, 2:11
**Morris** [2] - 4:23, 5:1
**most** [2] - 16:10, 26:22
**motion** [1] - 8:22
**move** [1] - 8:10
**moved** [1] - 9:24
**moving** [1] - 23:22
**MR** [46] - 4:14, 4:18, 5:1, 5:4, 5:8, 5:9, 5:12, 5:18, 5:22, 6:3, 6:9, 6:13, 7:2, 7:12, 7:17, 8:2, 8:8, 8:19, 9:10, 9:14, 9:19, 10:6, 10:9, 11:17, 11:20, 14:6, 14:22, 15:6, 15:13, 15:19, 16:5, 16:16, 18:11, 18:23, 19:16, 20:4, 20:12, 21:9, 21:11, 21:14, 21:23, 26:18, 27:17, 27:21, 28:5, 28:8
**MS** [29] - 4:6, 4:22, 7:14, 10:14, 11:1, 11:14, 11:25, 12:6, 13:14, 13:22, 15:17, 16:15, 16:18, 17:15, 18:7, 18:10, 19:15, 19:19, 20:3, 22:2, 22:7, 22:10, 23:6, 23:13, 24:6, 24:13, 24:24, 25:12, 28:7
**multiple** [1] - 22:8

### N

**name** [1] - 4:12
**narrow** [4] - 5:17, 8:10, 8:22, 16:17
**narrowed** [3] - 5:25, 6:1, 16:13
**narrowing** [1] - 25:16
**necessarily** [1] - 20:6
**need** [4] - 8:22, 14:11, 14:25, 20:1
**needing** [1] - 17:22
**new** [1] - 13:11
**next** [2] - 10:5, 21:3
**Nichols** [2] - 4:23, 5:2
**NICHOLS** [2] - 2:6, 2:11
**NO** [1] - 1:4
**non** [1] - 20:10
**non-anticipation** [1] - 20:10
**nonobviousness** [3] - 9:8, 18:8, 20:11
**nothing** [1] - 10:16
**noticed** [2] - 10:8, 10:9
**notwithstanding** [1] - 25:10
**number** [12] - 5:17, 6:22, 11:23, 16:25, 17:2, 17:7, 17:8, 21:6, 21:8, 22:3, 22:6, 24:8
**numbers** [2] - 16:1, 27:11

### O

**o'clock** [1] - 28:3
**O's** [1] - 4:15
**objected** [1] - 20:7
**obvious** [5] - 7:21, 8:12, 8:25, 9:3, 9:8
**obviously** [1] - 25:20
**obviousness** [13] - 8:11, 12:12, 12:14, 12:25, 14:14, 15:14, 15:19, 18:22, 19:5, 20:6, 20:19, 20:25, 21:5
**occurred** [1] - 4:3
**October** [2] - 7:13, 9:13
**OF** [2] - 1:2, 1:16
**offer** [4] - 25:18, 25:21, 25:23
**offered** [1] - 16:20
**Official** [1] - 3:20
**officially** [1] - 24:23
**old** [1] - 18:1
**one** [20] - 4:7, 4:9, 6:21, 7:15, 9:1, 11:10, 15:6, 17:1, 18:21, 22:13, 22:14, 22:15, 22:21, 22:23, 23:1, 24:4, 26:12, 26:15, 27:6
**ones** [7] - 22:15, 23:4, 26:2, 26:3, 26:8, 26:15, 26:20
**opening** [2] - 6:14, 13:2
**opposed** [4] - 6:2, 7:1, 12:6, 16:1
**order** [5] - 9:20, 25:9, 26:4, 26:24, 27:19
**Order** [4] - 7:4, 7:9, 17:20, 17:21
**original** [1] - 9:24
**outline** [1] - 17:18
**over-arching** [1] - 7:17
**overlap** [2] - 23:3, 26:22
**overstated** [1] - 11:23

## P

**p.m** [3] - 1:7, 4:3, 28:9
**pager** [1] - 7:15
**pages** [2] - 12:17, 12:21
**paper** [1] - 12:16
**papers** [1] - 14:19
**parcel** [2] - 6:4, 8:8
**pare** [1] - 9:3
**part** [10] - 6:3, 8:8, 12:25, 15:6, 15:9, 20:16, 23:23, 23:25, 28:4
**particular** [3] - 12:23, 14:20, 15:25
**particularly** [1] - 13:17
**parties** [1] - 6:18
**parties'** [1] - 6:9
**parts** [1] - 23:22
**party** [1] - 14:1
**patent** [17] - 11:6, 11:10, 22:1, 22:12, 22:13, 22:14, 22:15, 22:21, 22:23, 23:1, 23:2, 23:5, 25:6, 25:16, 26:2
**patents** [9] - 5:19, 5:20, 11:5, 11:11, 12:3, 18:16, 18:25, 22:8, 22:18
**PC** [1] - 3:13
**people** [2] - 10:2, 16:24
**per** [3] - 21:25, 25:6, 25:16
**perhaps** [1] - 24:9
**permutations** [1] - 14:24
**phased** [1] - 24:7
**Phil** [1] - 5:8
**PHILIP** [1] - 3:6
**pick** [1] - 26:20
**pieces** [1] - 6:22
**place** [2] - 9:25, 17:24
**plaintiff** [3] - 17:3, 25:10, 27:6
**Plaintiff** [2] - 1:6, 1:23
**plaintiffs** [3] - 7:18, 16:6, 21:16
**pleading** [1] - 12:17
**point** [11] - 6:11, 7:17, 8:22, 11:15, 12:15, 16:12, 16:17, 17:9, 17:14, 23:14, 23:19
**points** [1] - 10:15
**POLSINELLI** [1] - 3:13
**Polsinelli** [1] - 5:6
**position** [2] - 18:9, 20:14
**positions** [5] - 6:4, 6:7, 6:9, 17:17, 26:5
**possible** [1] - 19:5
**post** [1] - 17:12
**post-Markman** [1] - 17:12
**pOTTER** [2] - 3:5, 3:9
**Potter** [1] - 5:13
**PRAGMATUS** [1] - 1:4
**Pragmatus** [8] - 4:8, 4:9, 4:10, 11:3, 13:24, 17:5, 17:6, 17:20
**Pragmatus'** [5] - 5:16, 10:21, 12:9, 13:17, 27:24
**preempt** [1] - 22:19
**prefer** [1] - 22:2
**presentation** [1] - 27:13
**presumably** [2] - 16:3, 16:24
**pretty** [3] - 9:6, 21:13, 21:15
**previously** [1] - 25:6
**primary** [1] - 15:7
**problem** [3] - 20:12, 22:2, 23:6
**proceedings** [2] - 4:3, 28:9
**process** [2] - 6:12, 6:14
**product** [2] - 23:11, 23:15
**products** [1] - 23:10
**proposed** [1] - 27:19
**propounded** [1] - 8:24
**provided** [2] - 6:14, 6:15
**provides** [1] - 12:24
**providing** [1] - 20:17
**put** [4] - 4:14, 9:24, 13:3, 26:24
**puts** [1] - 26:11
**putting** [1] - 7:8

## Q

**quite** [1] - 21:3

## R

**read** [1] - 12:1
**reading** [2] - 12:3, 20:13
**ready** [1] - 21:22
**reality** [1] - 26:19
**really** [9] - 7:7, 7:22, 10:18, 12:10, 17:16, 17:23, 22:18, 22:24, 23:7
**reason** [10] - 5:24, 6:1, 8:12, 9:6, 9:7, 15:25, 20:17, 20:23, 21:1, 24:1
**reasonable** [3] - 16:25, 17:8, 21:18
**reasoned** [1] - 13:9
**recitation** [1] - 12:21
**reduce** [3] - 17:10, 17:20, 23:25
**reduction** [6] - 17:7, 17:13, 23:7, 27:5, 27:6, 27:8
**Reed** [2] - 3:11, 5:14
**reference** [5] - 18:15, 19:2, 19:21, 24:14, 24:15
**references** [41] - 8:11, 10:3, 10:22, 11:4, 11:5, 11:8, 11:11, 11:13, 12:2, 12:8, 12:23, 13:23, 14:12, 15:3, 15:7, 15:11, 15:23, 16:1, 16:2, 17:3, 17:7, 17:22, 17:25, 18:3, 18:12, 18:17, 18:24, 19:3, 19:4, 21:6, 21:25, 22:3, 22:7, 22:13, 22:19, 22:25, 24:10, 25:6, 25:15, 26:2
**refresh** [1] - 11:2
**regards** [1] - 21:5
**relate** [1] - 17:22
**related** [1] - 22:17
**relationship** [1] - 23:14
**rely** [2] - 14:14, 16:3
**relying** [2] - 15:12, 15:14
**remedy** [1] - 25:21
**remember** [1] - 9:19
**remind** [1] - 21:7
**reply** [2] - 6:16
**report** [2] - 7:8, 7:10
**Reporter** [2] - 3:19, 3:20
**representation** [1] - 17:9
**represented** [1] - 16:5
**request** [3] - 5:16, 13:6, 13:7
**requesting** [1] - 17:7
**required** [1] - 7:18
**resolve** [1] - 23:21
**respond** [2] - 20:24, 21:1
**responding** [1] - 13:5
**response** [4] - 7:20, 13:6, 13:8, 13:10
**responsive** [1] - 6:15
**results** [1] - 27:12
**revealed** [1] - 15:3
**rich** [1] - 5:13
**RICHARD** [2] - 1:17, 3:10
**Rite** [2] - 2:17, 5:2
**Rite-Aid** [2] - 2:17, 5:2
**road** [2] - 7:24, 27:3
**Rovner** [1] - 5:8
**ROVNER** [2] - 3:6, 5:8
**rule** [1] - 24:21
**rules** [1] - 14:8

## S

**satisfaction** [1] - 15:4
**saw** [1] - 17:9
**schedule** [5] - 7:12, 9:20, 9:24, 24:1, 27:25
**scheduled** [1] - 6:8
**Seagate** [3] - 2:9, 4:24, 4:25
**seated** [1] - 4:5
**seats** [1] - 5:9
**Security** [1] - 5:2
**see** [7] - 4:7, 24:22, 26:12, 27:14, 27:19, 28:6
**seek** [1] - 27:3
**seem** [1] - 12:13
**selection** [1] - 16:2
**sense** [3] - 9:17, 19:7, 23:20
**sentence** [1] - 11:7
**September** [2] - 6:8, 9:14
**seriously** [1] - 16:11
**served** [2] - 10:18, 12:19
**service** [1] - 19:1
**set** [1] - 9:3
**setting** [1] - 24:1
**severe** [1] - 23:7
**shall** [3] - 24:25, 25:4, 25:5
**short** [1] - 14:19
**show** [1] - 23:16
**shown** [1] - 9:8
**shows** [1] - 10:23
**SHUGHART** [1] - 3:13
**side's** [1] - 14:9
**significant** [1] - 17:13
**significantly** [2] - 6:23, 10:3
**similar** [1] - 17:2
**sitting** [1] - 8:12
**six** [7] - 17:11, 18:16, 18:21, 21:11, 21:12, 21:14, 27:9
**size** [2] - 24:8, 25:17
**solidified** [2] - 6:5, 6:7
**someone** [1] - 7:12
**sometimes** [1] - 21:16
**somewhere** [2] - 17:10, 27:9
**soon** [2] - 21:21, 28:6
**sorry** [3] - 6:6, 11:22, 18:5
**sort** [1] - 18:24
**sought** [1] - 8:9
**sounds** [1] - 12:2
**speaking** [1] - 10:12
**specific** [1] - 18:11
**specifically** [1] - 9:22
**spelled** [1] - 4:12
**spend** [2] - 10:5, 20:18
**spot** [1] - 4:15
**stacks** [1] - 14:19
**stage** [7] - 6:16, 15:8, 16:20, 16:23, 19:6, 23:7, 24:8
**start** [2] - 4:20, 10:25
**started** [1] - 15:22
**starting** [1] - 11:23
**state** [7] - 7:19, 7:22, 12:7, 14:12, 14:15, 14:25, 20:14
**STATES** [2] - 1:1, 1:18
**still** [4] - 15:7, 15:8, 23:8
**STOCKTON** [1] - 3:1
**storage** [1] - 22:22

**strategic** [1] - 27:12
**submit** [2] - 27:18, 27:20
**submitted** [1] - 9:20
**subset** [1] - 11:12
**substantial** [1] - 26:22
**sued** [1] - 26:12
**suggests** [2] - 25:10, 25:11
**support** [1] - 19:1
**sur** [1] - 6:16
**sur-reply** [1] - 6:16
**surprises** [1] - 12:10

### T

**table** [1] - 13:3
**talks** [1] - 10:21
**technical** [1] - 19:1
**Telecom** [3] - 4:8, 4:9, 4:10
**TELECOM** [1] - 1:4
**telephone** [2] - 23:21, 23:22
**terms** [7] - 12:10, 13:15, 14:18, 15:1, 15:10, 15:25, 21:6
**THE** [65] - 1:2, 1:17, 4:5, 4:7, 4:16, 4:19, 5:15, 5:19, 5:24, 6:6, 6:11, 6:17, 7:10, 7:16, 8:1, 8:5, 8:17, 9:5, 9:11, 9:15, 10:1, 10:8, 10:11, 10:25, 11:2, 11:16, 11:18, 11:21, 12:5, 13:12, 13:15, 14:3, 14:17, 15:1, 15:9, 15:16, 15:18, 15:20, 16:14, 16:21, 18:5, 18:8, 18:20, 19:14, 19:17, 19:25, 20:5, 20:16, 21:10, 21:12, 21:19, 21:24, 22:4, 22:9, 22:12, 23:11, 23:18, 24:11, 24:16, 24:25, 25:18, 26:23, 27:18, 27:22, 28:6
**theirs** [1] - 24:3
**therefore** [1] - 12:24
**they've** [3] - 6:15, 20:22, 24:22
**thinking** [3] - 21:20, 24:1, 24:20
**thinks** [1] - 26:1
**third** [2] - 11:5, 14:1
**third-party** [1] - 14:1
**THOMPSON** [1] - 2:1
**Thornley** [1] - 5:5

**THORNLEY** [2] - 2:20, 5:4
**three** [7] - 5:19, 5:20, 8:10, 8:11, 11:11, 16:8, 23:2
**throughout** [1] - 16:6
**today** [3] - 9:6, 10:18, 13:11
**today's** [1] - 26:21
**together** [4] - 5:2, 7:8, 18:21, 25:20
**topics** [1] - 13:16
**total** [9] - 11:8, 22:2, 22:5, 22:6, 24:13, 24:14, 25:1, 25:7, 25:15
**towards** [1] - 17:7
**Townsend** [1] - 5:11
**TOWNSENDS** [1] - 3:1
**TRANSCRIPT** [1] - 1:16
**trial** [3] - 17:10, 21:11, 27:9
**truly** [1] - 16:13
**trying** [2] - 15:24, 24:4
**TUNNELL** [2] - 2:6, 2:11
**two** [14] - 6:3, 9:18, 10:5, 11:5, 11:9, 11:16, 11:17, 12:18, 12:19, 22:13, 22:16, 23:1, 24:3, 27:8

### U

**U-Haul** [2] - 3:15, 5:7
**under** [2] - 25:2, 25:11
**unfair** [1] - 18:3
**uniform** [1] - 27:7
**UNITED** [2] - 1:1, 1:18
**universe** [1] - 11:13
**unreasonable** [1] - 10:17
**unusual** [1] - 14:2
**unwieldy** [1] - 13:4
**up** [4] - 8:6, 16:7, 25:18, 26:14

### V

**validity** [1] - 20:14
**various** [2] - 13:16, 16:23
**verify** [1] - 14:23
**version** [1] - 24:19
**views** [2] - 23:10, 23:17
**Volkswagen** [7] - 2:9, 4:10, 4:23, 4:24, 11:4, 11:10, 11:12

### W

**wait** [1] - 22:5
**waive** [1] - 27:24
**walk** [1] - 10:4
**wants** [3] - 25:21, 25:22, 26:7
**web** [1] - 19:1
**week** [3] - 21:23, 21:24, 27:6
**weeks** [4] - 9:18, 10:5, 24:3, 27:8
**welcome** [1] - 5:15
**willing** [3] - 9:2, 13:9, 16:17
**withstanding** [1] - 13:16
**witnesses** [1] - 10:10
**wondering** [3] - 6:17, 6:25, 10:1
**word** [2] - 19:18, 22:22
**works** [1] - 8:17
**worldwide** [1] - 19:1
**wrote** [2] - 8:1, 23:23

### Y

**year** [1] - 9:25

### Z

**zero** [1] - 13:22
**Zynga** [2] - 17:1, 17:3