# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FUNDAMENTAL INNOVATION SYSTEMS INTERNATIONAL LLC, ) ) ) Plaintiff, ) ) v. ) ) LENOVO (UNITED STATES) INC.; LENOVO HOLDING COMPANY, INC.; LENOVO GROUP LTD., and MOTOROLA MOBILITY LLC, ) ) ) ) ) ) Defendants. ) | Civil Action No. 20-551-RGA-CJB |

Brian E. Farnan and Michael J. Farnan, FARNAN LLP, Wilmington, DE; Edward J. DeFranco, Brian P. Biddinger, Joseph Milowic III and Ron Hagiz, QUINN EMANUAL URQUHART & SULLIVAN LLP, New York, NY; Kevin P.B. Johnson, QUINN EMANUAL URQUHART & SULLIVAN LLP, Redwood Shores, CA, Attorneys for Plaintiff.

Brian A. Biggs and Stephanie E. O'Byrne, DLA PIPER LLP (US), Wilmington, DE; Sean C. Cunningham, Erin P. Gibson and Peter Maggiore, DLA PIPER LLP (US), San Diego, CA; Jake Zolotorev, Erik R. Fuehrer, Sangwon Sung and Monica De Lazzari, DLA PIPER LLP (US), East Palo Alto, CA, Attorneys for Defendants.

## MEMORANDUM OPINION

April 7, 2022
Wilmington, Delaware

*Christopher J. Burke*
**BURKE, United States Magistrate Judge**

Presently pending before the Court in this patent infringement case are Defendants Lenovo (United States) Inc., Lenovo Holding Company, Inc. (collectively, "Lenovo") and Motorola Mobility LLC's ("MML" and collectively with Lenovo, "Defendants")[1] "Motion for Partial Summary Judgment on Sixth Affirmative Defense (License)," (D.I. 91), and Plaintiff Fundamental Innovation Systems International LLC's ("Fundamental" or "Plaintiff") "Motion for Summary Judgment on Lenovo's Sixth Affirmative (Licensing) Defense," (D.I. 93). For the reasons set forth below, Defendants' Motion is DENIED and Plaintiff's Motion is GRANTED.

The Court writes primarily for the parties here, as both sides are well-familiar with the facts and wish for a quick resolution of the Motions.[2]

The key relevant background facts are not disputed. In November 2015, Fundamental acquired the seven patents asserted in this case from Blackberry Limited, the successor-in-interest to Research in Motion Limited ("RIM"). (D.I. 94 at ¶ 16; D.I. 120 at ¶ 16) The patents were subject to two Patent Cross License Agreements (the "2010 Agreement" and the "2011 Agreement"); RIM entered into each of the agreements with an MML-related entity (that, for ease of reference, will hereafter be referred to simply as MML). (D.I. 94 at ¶¶ 1, 3-4; D.I. 97 at

---

[1] Although Lenovo Group Ltd. is listed in the case caption, Lenovo has represented that Lenovo Group Ltd. was never served with a summons and the Complaint, and thus has not appeared in this action and does not join in Defendants' Motion. (D.I. 92 at 3)

[2] With regard to the procedural background of the case, Fundamental filed this action on April 23, 2020. (D.I. 1) The instant Motions, which are early summary judgment motions, were filed on January 10, 2022, (D.I. 91; D.I. 93), and briefing was completed on January 31, 2022, (D.I. 118; D.I. 121). The parties have jointly consented to the Court's entry of a final order as to the Motions. (D.I. 74; D.I. 74-1; D.I. 82) The Court held a hearing on the Motions on March 11, 2022. (D.I. 157 (hereinafter, "Tr.")) Trial in this case is set to begin on October 17, 2022. (D.I. 23)

¶¶ 1, 3, 7)³  Pursuant to the 2011 Agreement, *inter alia*, RIM granted MML and its Affiliates a license to field "LICENSED MOTOROLA MOBILITY PRODUCTS AND SERVICES[.]" (D.I. 98, ex. 2 at § 3.5; *see also* D.I. 97 at ¶ 10; D.I. 124 at ¶ 10)  The effective date of the 2011 Agreement is January 4, 2011.  (D.I. 98, ex. 2 at § 1.4; *see also* D.I. 92 at 14)  The licenses granted pursuant to the 2011 Agreement expired on May 30, 2020.  (D.I. 98, ex. 2 at § 6.1; D.I. 94 at ¶ 8; D.I. 97 at ¶ 5)  On October 30, 2014, Lenovo Group Ltd. completed the acquisition of MML's parent company, Motorola Mobility Holdings LLC.  (D.I. 94 at ¶ 9; D.I. 120 at ¶ 9)  And it is undisputed that in January 2015, Lenovo subsequently provided a timely Notice of Election, which meant that, pursuant to the 2011 Agreement, it became an "Affiliate" of MML.  (D.I. 94 at ¶¶ 11-12; D.I. 120 at ¶¶ 11-12; Tr. at 15, 70-71; D.I. 98, ex. 2 at § 1.1)

With that factual background in mind, the Court turns to what *is* hotly disputed here: how the 2011 Agreement should be interpreted, in terms of the scope of licensed products under the Agreement.  Lenovo asserts that its license under the 2011 Agreement *extends to Lenovo's own accused products*, and that Lenovo is licensed as to those products up through and including May 30, 2020.  (D.I. 92 at 3-4)⁴  Lenovo's Motion thus requests summary judgment of non-infringement for all of Lenovo's accused products sold on or before that date.  (*Id*. at 2, 24-25)  Fundamental, for its part, contends that the 2011 Agreement *does not cover Lenovo's own accused products*.  Fundamental's Motion accordingly requests summary judgment "dismissing Lenovo's Sixth Affirmative (Licensing) Defense with respect to Lenovo's accused products."  (D.I. 118 at 2; *see also* D.I. 95 at 1-2, 7-17)

---

³ The provisions of the 2010 and 2011 Agreements are similar in all relevant respects.  (*See* D.I. 92 at 5 n.1)  Therefore, as the parties did in their briefing, the Court will reference the 2011 Agreement herein.

⁴ There is no dispute that MML's accused products are licensed for the time period from January 4, 2011 through May 30, 2020.  (D.I. 94 at ¶ 17; D.I. 120 at ¶ 17; D.I. 118 at 2 n.1)

3

The Court, having considered the briefing, the parties' arguments made during oral argument on the Motions, and the applicable law,[5] concludes that Fundamental is correct. It does so for the following reasons.

As an initial matter, the text of a key portion of the 2011 Agreement—Section 1.12—strongly supports Fundamental's argument. Section 1.12 defines "LICENSED MOTOROLA MOBILITY PRODUCTS AND SERVICES[.]" (D.I. 98, ex. 2 at § 1.12) It states that the license only extends to past products, current products, and products in development by MML and its Affiliates as of January 4, 2011, the effective date of the agreement, (*id*. at §§ 1.12(a)-(b)), and natural evolutions of those products that are fielded by MML and its Affiliates in the future, (*id*. at § 1.12(c)), as well as to substantially similar products of any third party "*acquired by*" MML after the effective date of the Agreement, (*id*. at § 1.12(d) (emphasis added)). (D.I. 95 at 8; D.I. 118 at 2, 8)[6]

---

[5] A grant of summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Here, as noted above, the relevant facts are not in dispute. (D.I. 92 at 8; D.I. 95 at 3; Tr. at 10-11, 54-55) Instead, the parties dispute the proper interpretation of the 2011 Agreement, which is a question of law appropriate for resolution on summary judgment. (D.I. 92 at 8; D.I. 95 at 6; D.I. 118 at 1); *see also GTE Corp. v. Allendale Mut. Ins. Co.*, 372 F.3d 598, 608 (3d Cir. 2004) ("[Q]uestions of contract interpretation [were] properly within the province of the District Court at the summary judgment stage of the litigation."); *Amadeus Global Travel Distrib., S.A. v. Orbitz, LLC*, 302 F. Supp. 2d 329, 334 (D. Del. 2004).

It is undisputed here that Delaware law applies to the interpretation of the 2011 Agreement. (D.I. 92 at 7; D.I. 95 at 7) Pursuant to Delaware law, clear and unambiguous language in a contract "should be given its ordinary and usual meaning." *Rhone-Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1195 (Del. 1992). "A contract is not rendered ambiguous simply because the parties do not agree upon its proper construction." *Id.* at 1196. Ambiguity exists only when the contract's provisions are susceptible of different reasonable interpretations, or have two or more meanings. *RSUI Indem. Co. v. Murdock*, 248 A.3d 887, 906 (Del. 2021).

[6] Specifically, Section 1.12 defines "LICENSED MOTOROLA MOBILITY PRODUCTS AND SERVICES" to mean:

In light of this contractual language, Fundamental contends that Lenovo's accused products simply do not fall into any of the categories set out in Section 1.12, because: (1) Lenovo was not an Affiliate of MML as of the effective date of the 2011 Agreement, and only became an Affiliate after its later acquisition of MML (so Section 1.12 (a)-(b) cannot apply to Lenovo's accused products); (2) it is undisputed that Lenovo's accused products are not "natural evolutions" of any prior products of MML or its Affiliates that existed as of the effective date of the agreement (so Section 1.12(c) cannot apply); and (3) Lenovo acquired MML, not the other way around (so Section 1.12(d) cannot apply). (D.I. 95 at 9 & n.2; D.I. 118 at 8; Tr. at 71-72)

Lenovo's contrary position regarding Section 1.12 is that, so long as a third party that acquires MML after the effective date of the agreement complies with the "Change of Control" provisions set out in Section 6.8 and elects to become an Affiliate, then Sections 1.12(a)-(c) retroactively apply to that (new) Affiliate, regardless of when it became an Affiliate. (D.I. 92 at 10-12, 16-18; Tr. at 27)[7] Thus, according to Lenovo, because Lenovo timely complied with the

---

> [A]ny and all: (a) past Products FIELDED by the MOTOROLA predecessor businesses of MOTOROLA MOBILITY or any of the MOTOROLA MOBILITY AFFILIATES; (b) current Products FIELDED by MOTOROLA MOBILITY or any MOTOROLA MOBILITY AFFILIATE as of the EFFECTIVE DATE and Products in development as of the EFFECTIVE DATE subsequently FIELDED by MOTOROLA MOBILITY or any MOTOROLA MOBILITY AFFILIATE, all as substantiated by demonstrable evidence; (c) all future Products FIELDED by MOTOROLA MOBILITY or any of its AFFILIATES embodying natural evolutions of (a) and (b) during the TERM of this AGREEMENT; and (d) Products of AFFILIATES acquired by MOTOROLA MOBILITY after the EFFECTIVE DATE that are substantially similar to (a), (b) or (c).

(D.I. 98, ex. 2 at § 1.12)

[7]     Specifically, Lenovo contends that its products would fall under Section 1.12(c), as it contends that Lenovo's accused desktops, laptops and tablets constitute "natural evolutions"

Change of Control provisions after acquiring MML in 2014, the licenses set forth in the 2011 Agreement retroactively extended to Lenovo and Lenovo's own products (while also obligating Lenovo to grant RIM a license to Lenovo's patent portfolio). (D.I. 121 at 9-14)

In the Court's view, Section 1.12(d) makes clear that Fundamental's reading of Section 1.12 must be the correct one. (D.I. 95 at 10-11; D.I. 118 at 10; Tr. at 74-75) As noted above, this subsection grants a specific license for substantially similar products of later-arising affiliates *that were acquired by MML* in the future; it does not expressly provide any license as to products of Affiliates *that acquired MML* (like Lenovo did) after the effective date of the 2011 Agreement. (D.I. 95 at 10; D.I. 118 at 10) Importantly, this illustrates that Section 1.12(d)'s drafters knew that in order to retroactively extend a license covering the products of a later-arising Affiliate, they had to use additional language other than that already set out in Section 1.12(a)-(c). And the drafters did in fact employ such additional language, but *only with respect to Affiliates later acquired by MML*. As Fundamental argues, this "confirms that *no* additional license grant was contemplated or intended for products of Affiliates *that acquire* MML (such as Lenovo)." (D.I. 95 at 10-11 (certain emphasis in original, certain emphasis added))[8] Indeed, if

---

of Lenovo's products that were in development or released as of the effective date of the 2011 Agreement. (D.I. 92 at 13-15; Tr. at 13)

[8]   For its part, Lenovo highlights the language in Section 2.2 of the 2011 Agreement, (D.I. 92 at 17-18; Tr. at 38-39), which refers to MML "and those AFFILIATES affiliated with [MML] on the EFFECTIVE DATE of this AGREEMENT[,]" (D.I. 98, ex. 2 at § 2.2). Lenovo argues that Section 2.2 demonstrates that: (1) when the drafters intended to refer to Affiliates that existed as of the date of the 2011 Agreement, they knew what language to use; and so (2) because the drafters did not use such language in Section 1.12, then when Section 1.12 refers to "Affiliates" that term must encompass not just Affiliates that existed as of the date of the 2011 Agreement, but also entities that became Affiliates thereafter (like Lenovo).

The Court acknowledges that this argument has some intuitive appeal. Lenovo is right that Section 2.2 shows that: (1) the drafters surely knew how to use language like "AFFILIATES affiliated with [MML] on the EFFECTIVE DATE of this AGREEMENT"; and (2) they could easily have inserted text like this into Section 1.12, but did not. Yet in the Court's

6

Lenovo's interpretation of Sections 1.12(a)-(c) was correct—i.e., that these sections apply to Affiliates arising after the effective date of the agreement—then Section 1.12(d) itself would be superfluous, because the products of Affiliates acquired by MML after the effective date that are substantially similar to those covered by Sections 1.12(a)-(c) *would already be licensed under Sections 1.12(a)-(c)*. (*Id.*; D.I. 118 at 10-11; Tr. at 36-37) In assessing a contract's meaning, a court must avoid an interpretation that would render a contractual provision illusory or meaningless. *Manti Holdings, LLC v. Authentix Acquisition Co.*, 261 A.3d 1199, 1208 (Del. 2021). And so Fundamental's position here must be the right one.[9]

---

view, the import of Section 1.12(d)'s language, as well as the other considerations cited herein, nevertheless demonstrate that Fundamental's position is correct. To that end, it may well be that the drafters simply did not feel the need to insert the "AFFILIATES"-related language from Section 2.2 into Section 1.12, because Section 1.12's wording *already conveyed the same message*: i.e., that Section 1.12(a)-(c)'s reference to "Affiliates" was already a clear reference to only those Affiliates that had become Affiliates as of the effective date of the 2011 Agreement.

[9] In its briefing, Lenovo responded to Fundamental's Section 1.12(d)/"superfluous" argument, but Lenovo's position in that regard did not make any sense. There, Lenovo retorted that the reason why Section 1.12(d) would not be superfluous in light of Sections 1.12(a)-(c) was that Section 1.12(d) "would only be triggered if [MML] acquired an Affiliate and that Affiliate did *not* provide a Notice of Election, thereby becoming a 'Non-Agreeing Third Party'" pursuant to Section 6.8.1 (because if the acquired Affiliate *did* provide such notice, that Affiliate's products would be covered by Sections 1.12(a)-(c)). (D.I. 121 at 7 (emphasis in original); *see also* D.I. 92 at 18-19) But this argument could not be correct. Section 6.8.1 is clearly triggered only when there has been a "THIRD PARTY ACQUIRER" of MML; it thus could not be applicable to the third parties covered by Section 1.12(d), which are parties that have been *acquired by MML*. (D.I. 118 at 10-11; Tr. at 100)

No doubt later realizing that this position was untenable, Lenovo abandoned it during oral argument. There, for the first time, Lenovo put forward a *different* argument as to why Section 1.12(d) would not be superfluous under its interpretation of the 2011 Agreement. (Tr. at 35-37) More specifically, Lenovo asserted that Section 1.12(d) is not redundant because it provides Affiliates acquired by MML with a *broader license* than that allowed by Sections 1.12(a)-(c)—in that Section 1.12(d) provides acquirees extra licensing protection by extending to products that are "substantially similar" to the products covered by Sections 1.12(a)-(c). (*Id*. at 28-32, 35-37) Whatever the merit of this argument may be, (*see id*. at 85), because Lenovo could have articulated it in its responsive brief (but did not), (*see* D.I. 95 at 10-11 (Fundamental's opening brief setting out its "superfluous" argument); D.I. 121 at 7-8 (Lenovo responding to Fundamental's "superfluous" argument in its answering brief)), it is very clearly waived,

7

Additionally, the Court is persuaded by the fact that there is an underlying logic to Fundamental's reading of Section 1.12. It is understandable why the 2011 Agreement's drafters would have: (1) extended a license to the substantially similar products of a later-arising Affiliate *that was acquired* by MML (as they did in Section 1.12(d)), and yet (2) not granted a license to any and all pre-existing products of a later-arising Affiliate *that acquired* MML. After all, when the 2011 Agreement was signed, the parties would not have known the identity of any future acquirer of MML—nor of the scale or scope of any products made or sold by such a company. And since one might reasonably assume that a future acquirer would be a larger company than MML (perhaps much larger), RIM might have been concerned about the prospect of granting an unknown future MML acquirer a full license to RIM's technology. (D.I. 95 at 13 (Fundamental noting that "Lenovo's assertion that the [2011] Agreement grants a retroactive license to all preexisting products of a later-arising Affiliate is illogical, as it would permit a large company selling a variety of products not contemplated by the parties at the time of the Agreement to acquire MML and thereby obtain the benefit of a license to RIM's patents for products far exceeding the scope of the contemplated license and the consideration exchanged by the parties"); *see also* D.I. 118 at 6; Tr. at 19-20, 23, 63-64, 66, 89-90) On the other hand, the contracting parties might reasonably have assumed that any company acquired by MML in the

---

*see Horatio Wash. Depot Techs. LLC v. TOLMAR, Inc.*, Civil Action No. 17-1086-LPS, 2018 WL 5669168, at *7 n.4 (D. Del. Nov. 1, 2018) (holding that a new argument presented at oral argument was waived where it "was not fairly presented in [the] briefing[ ]") (citing cases), *report and recommendation adopted*, 2019 WL 1276028 (D. Del. Mar. 20, 2019); *cf. Tomasko v. Ira H. Weinstock, P.C.*, 357 F. App'x 472, 479 (3d Cir. 2009) (holding that arguments raised for the first time at oral argument in the district court were waived because that method of proceeding could "deprive one's opponent of any meaningful opportunity to respond").

future would be a smaller entity than MML—such that the scope of a license grant to that kind of company would be more manageable (and thus more palatable to RIM).[10]

For the foregoing reasons,[11] the Court concludes that Defendants' Motion should be DENIED and Plaintiff's Motion should be GRANTED. An appropriate Order will issue.

---

[10] Lenovo's other counter-arguments are not availing. For example, Lenovo contends that Fundamental's interpretation of the 2011 Agreement would lead to an "absurd result" because later-arising "Affiliates like Lenovo would only receive a license if [MML] was already making the Affiliate's products as of the effective date" of the 2011 Agreement. (D.I. 92 at 20) However, under the 2011 Agreement, a later-arising acquirer like Lenovo that elected to become an Affiliate would still get certain benefits, such as the ability to itself make and sell the pre-existing licensed products of MML and MML's original Affiliates (including the ability to dramatically expand the amount of such products that were made and sold). (D.I. 95 at 11-12; D.I. 118 at 4-5; Tr. at 67-68, 90-91; see also D.I. 98, ex. 2 at § 6.8.1) Thus, the Court does not understand Fundamental's interpretation to lead to "absurd" results.

Lenovo additionally points to the language in Section 6.9 of the 2011 Agreement as supporting its interpretation; Section 6.9 provides that "the grant of commensurate broad licenses . . . by each Party and its AFFILIATES to the other Party and its AFFILIATES is a fundamental element of this Agreement." (D.I. 98, ex. 2 at § 6.9) According to Lenovo, this provision confirms that Affiliates like Lenovo who provided a Notice of Election were to receive licenses with a broad scope. (D.I. 92 at 12, 20; D.I. 121 at 11; Tr. at 8-9) The Court is not persuaded by this argument, however. Section 6.9 seems to be referring to what happens should there be a future bankruptcy proceeding. And in any event, the vague, general language therein does not trump the clear meaning of Section 1.12. (D.I. 118 at 4-5; Tr. at 102-03)

[11] Fundamental also set out a second "independent" basis for granting summary judgment in its favor. (D.I. 118 at 2; see also D.I. 95 at 1-2) That is, even were the Court to have agreed that Lenovo's above-referenced position is correct (and that the 2011 Agreement provided Lenovo with a license to its own products when Lenovo became an Affiliate of MML), Fundamental argues that it should nevertheless prevail because: (1) a "Separation Event" took place pursuant to Section 6.6 of the 2011 Agreement, concurrent with Lenovo's acquisition of MML; (2) this Separation Event operated to limit the scope of licensed products only to products already licensed before Lenovo's acquisition of MML (and natural evolutions thereof); and (3) the Separation Event therefore precludes a license to Lenovo's products. (D.I. 95 at 14-17) However, because the Court agrees with Fundamental's first independent basis for granting summary judgment on its Motion, the Court need not address Fundamental's second argument.